AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH THE CELLULAR<br>DEVICE ASSIGNED CALL NUMBER (405) 777-9952 IN<br>THE CUSTODY OR CONTROL OF VERIZON | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.  MJ-25-45-CMS |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ **New Jersey** _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422(b) | Attempted Coercion and Enticement of a Minor |

The application is based on these facts:

See Affidavit of Special Agent David Garrison, FBI, which is attached and incorporated by reference herein.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of  365  days (give exact ending date if more than 30 days:  01/22/2026  ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

David Garrison, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  January 22, 2025

_____
*Judge's signature*

City and state:  Oklahoma City, Oklahoma

CHRIS M. STEPHENS, U.S. MAGISTRATE JUDGE
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (405) 777-9952 IN THE CUSTODY OR CONTROL OF VERIZON** | **Case No.**  M-25-45-CMS_____<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, David Garrison, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this Affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned with call number **(405) 777-9952** (the "**SUBJECT ACCOUNT**") that is in the custody or control of **VERIZON**, a wireless communications service provider that accepts process at 180 Washington Valley Road, Bedminster, NJ 07921.   As a provider of wireless communications service, **VERIZON** is a provider of "electronic communications service," as defined in 18 U.S.C. § 2510(15).

2.      The information to be searched is described in the following paragraphs and in **Attachment A**. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require **VERIZON** to disclose to the government the information further described in Section I of **Attachment B**. Upon receipt of the information described in Section I of **Attachment B**,

government-authorized persons will review the information to locate the items described in Section II of **Attachment B**.

3.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definition of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. §§ 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act, *see* 18 U.S.C. §§ 3121–3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute, including a certification from an attorney for the government that the information likely to be obtained by the requested pen register and trap-and-trace device is relevant to an ongoing criminal investigation. *See* 18 U.S.C. § 3123(b)(1). That certification is attached as **Attachment C**.

4.      In sum, this Affidavit is made in support of an application for three distinct items: (1) a pen register and trap-and-trace device on the **SUBJECT ACCOUNT**, pursuant to 18 U.S.C. §§ 3121–3127; (2) a "ping" on the **SUBJECT ACCOUNT**, pursuant to 18 U.S.C. § 2703 and Fed. R. Crim. P. 41(c); and (3) an order for historical and prospective cell site data for the **SUBJECT ACCOUNT**, pursuant to 18 U.S.C. § 2703(d).

5.      I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2005. In this capacity, my responsibilities include the investigation of possible violations of

federal law, including the investigation of crimes against children. During my career, my investigations have included the use of various surveillance techniques and the execution of various search, seizure, and arrest warrants.

6.      The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.      I am investigating the online and physical activities of an individual who has made plans to travel within the state of Oklahoma, to engage in sexual acts with children. As shown below, there is probable cause to believe that a person named Ronnie Allen Barton ("BARTON") who is using a facility or means of interstate and foreign commerce, namely, a cell phone, cell phone data and messages, a computer, and the Doublelist website, to knowingly attempt to persuade, induce, entice, and coerce an individual(s) who have not attained the age of 18 years to engage in sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. § 2422(b). I submit this Application and Affidavit in support of searching the information described in **Attachment A** to assist and aid in seizing of evidence and apprehension of BARTON, as described in **Attachment B**, and in locating BARTON as he travels within the state of Oklahoma.

8.      The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction," as defined in 18 U.S.C. §§ 2711 & 3127. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. §§ 2711(3)(A)(i) & 3127(2)(A)(i).

## **PROBABLE CAUSE**

9.      On July 26, 2024, Online Covert Employee 6862 ("OCE") posted the following on the website Doublelist:[1]    "Finding myself more and more interested in watching others spend time with and enjoy my 'littles.' Open-minded with no limits." On July 26, 2024, BARTON, utilizing the username, "morelka," initiated and engaged in a Doublelist direct message chat conversation with the OCE.   The conversation is summarized below, beginning in Paragraph 12.

10.    On August 28, 2024, Doublelist returned administrative subpoena information for the subscriber "morelka."   Contained within the returns were posts "morelka" had made on Doublelist from February to July of 2024.  The "verified user phone number" associated with the posts and the Doublelist account was listed as 405-777-9952.[2]  Open-source research into the phone number 405-777-9952 showed the number belonging to BARTON, beginning in February of 2019.  Additionally, as of July 31, 2024, the Oklahoma Department of Corrections Sex Offender Registration listed BARTON's telephone number as 405-777-9952.  On October 16, 2024, in response to a subpoena request for subscriber information from August 11 to September 11, 2024, Verizon

---

[1] Doublelist is an online website based in San Francisco, California.  Its home page states that it is where people can "[c]onnect with straight, gay, bi[,] and curios!"  Its mission statement is: "[t]o be a SAFE community where you can learn, explore[,] and enhance your sexual side."

[2] On the Doublelist FAQ page, in response to a question regarding the verification of phone numbers, the response states, "[w]e may occasionally ask you to verify your account with a phone number.  We only allow real cellular number and landlines to be used for phone verifications.  Please allow up to 5 minutes for the code to arrive."

returned results for the subscriber of 405-777-9952, which confirmed the information was listed under BARTON's name.

11.    With open-source information revealing BARTON's cell phone number matching the **SUBJECT ACCOUNT**, BARTON providing the **SUBJECT ACCOUNT** as his cell phone for verification purposes for the Doublelist website, the **SUBJECT ACCOUNT** being listed for BARTON's sex offender registry, and Verizon returning subscriber information indicating BARTON as the subscriber for the **SUBJECT ACCOUNT,** I believe that Ronnie Allen Barton is using the **SUBJECT ACCOUNT**.

12.    On July 26, 2024, BARTON began the direct message chat conversation with the OCE by stating, "48 ddf swm here with 7c.  I'd like to know more about your 'littles.'"[3] The OCE responded, "Hey.  Sure.  Have access to a 9 yr old step-daughter and 11 yr old niece."  BARTON asked for an address, to which the OCE replied, "I set em up at motels." BARTON replied, "The hotel next to the ta truck stop on council would be great if you could."  After asking for and being denied pictures of the OCE's "girls," BARTON asked, "Can you at least describe them some and what can and can't be done to them?"

13.    After the OCE replied with physical descriptions of the "girls" and descriptions of what they generally do with the men with whom they meet, BARTON asked, "Either of them suck?"  Soon after, BARTON chatted, "Can't wait to see them" and asked, "condoms required?"  BARTON also asked, "What's the biggest they have had in

---

[3] On dating websites and personal ads, "ddf" and "swm" typically mean "drug disease free," and "straight white man," respectively.  Additionally, "7c" is a descriptor for the user's penis size.

them?"[4] BARTON later added, "Well, I was hoping this was for tonight or tomorrow, but I'll definitely be waiting."

14.    On July 30, 2024, after a further chat discussion about meeting up for the purpose of BARTON engaging in sexual activity with the OCE's "girls," BARTON chatted, "Well, weekends are best for me." After the OCE asked BARTON what the "girls" could expect from him, BARTON replied, "I really need a good blow, other than that, I'm open." The OCE indicated he would find out from his "ex-wife" when he would be granted access to the "girls" again.

15.    On August 13, 2024, BARTON sent the OCE a chat asking, "How are things" and told the OCE how he needed "female help." BARTON went on to chat, "Seems like everyone here is fake." The OCE replied, "Getting harder and harder to fins someone who shares y same 'interests,' if you know what I mean." BARTON replied, "I never heard anything back from you about it." The OCE replied, "Lost access to the girls for a bit. Should be able to have them with me again in a couple of weeks."

16.    On August 26, 2024, BARTON reached out to the OCE and chatted, "so when are you available?" The OCE replied, "I can have em [the "girls"] starting the 12th and 13th of next month." BARTON replied, "Friday evenings are my only free time." BARTON went onto describe how he "would love mff.[5]  I also feel I should make it

_____

[4] Typically, when users ask this question on a sexual or dating themed website or private messenger application, they are asking about the biggest sized penis that has been inserted into a female's vagina.

[5] In text or chatting language, "mff" means "male, female, female."

enjoyable for them, so I'm trying to find out what they like best or if there is something they want to try. Or if there is something particular you want to see done." BARTON went on to ask, "How do they taste" and then added, "Can't wait." BARTON also asked, "Have they tried anal" and added, "I'd love to start out watching them play with each other and double bj."[6] BARTON added, "Would love having my balls licked and sucked while I'm inside something tight" and "I really want to see them naked."

17.     On September 9, 2024, and September 15, 2024, BARTON reached out to the OCE again on Doublelist. BARTON asked, "How have things been going?" and "How's it going?" Between those dates and September 27, 2024, BARTON and the OCE exchanged chats about the weather and family. After that, BARTON informed the OCE in a chat, "Let me know when you're ready to play." The OCE responded by letting BARTON know his "access to the girls" was limited to Thursdays and Fridays. BARTON responded with, "Friday evenings are best for me." The OCE replied, "Wasn't sure if you were still interested. BARTON replied, "Yeah."

18.     BARTON next suggested a date to meet of October 11, 2024, since he got off work early that day. The OCE informed BARTON that he could not do that day because he had plans for that weekend that could not be changed. BARTON replied "np, I was just thinking that I'll have to grab a shower after work before I meet." He added a chat a few minutes later, "Unless they'd wanna shower with me in the motel...Lol." On October 18, 2024, BARTON sent the OCE a chat reiterating that he was free Fridays after 5 p.m.

---

[6] In chatting or texting language, "bj" typically means "blowjob."

19.    On November 8, 2024, BARTON reached out to the OCE again on Doublelist, asking "What's up." On November 12, 2024, BARTON stated, "I wanna hear about the fun you and the girls have been having." Later that day, he added, "Since I haven't had the chance, I wanna hear about it." After the OCE responded with, "Nothing to tell, honestly." BARTON responded the next day with, "Available Friday?" After the OCE replied with, "What did you have in mind?" BARTON replied with, "Wanting to play." The OCE replied, "The girls are ready." BARTON replied, "Just let me know when and where."

20.    On November 19, 2024, the OCE, utilizing Doublelist, suggested to BARTON a meet up with the juvenile females on the evening of Friday, November 22, 2024. BARTON replied, "Sounds good." On December 5, 2024, after the proposed meet with BARTON did not develop further, BARTON reached out to the OCE on Doublelist with the message, "Guess it was a no go. Well, just let me know."

21.    On December 11, 2024, the OCE replied, "Hey man, sorry, thought it was a no go on your end." On December 18, 2024, BARTON replied to the OCE, "No, any Friday evening is good for me, I was waiting for you to confirm and tell me time and place."

22.    On January 8, 2025, BARTON, utilizing Doublelist, reached out to the OCE again and chatted, "Just let me know." On January 15, 2025, BARTON and the OCE engaged in a series of chats. The OCE stated, "Hey man, the girls and I are free Friday the 24th, what time works for you?" BARTON replied, "Anytime after 5pm." BARTON also chatted, "Please send me some pics." The OCE replied, "Does 6pm work?" BARTON

replied, "Perfect." BARTON then added, "I know you don't like to send them but I'd really like to see nude pics."

23.     On January 17, 2025, utilizing Doublelist, the OCE and BARTON engaged in another series of chats. The OCE replied to BARTON, "I know man, you know we're into the real thing," and then added, "where do you want to meet?" BARTON replied, "Wherever in OKC is convenient for you, I'm not picky." The OCE replied, "Cool, I'll let you know." BARTON then responded, "Ok, main reason I asked about pics this time is cause cops can't send those kind of pics and I was just trying for my safety."

24.     On January 18, 2025, the OCE, utilizing Doublelist, replied to BARTON, "Yeah, I get it. But it's for the girls safety and mine. I've been burned to much. Sorry man, if this isn't going to work, that's cool." Later the same day, BARTON replied, "I'm ready, I was just trying to make sure."

25.     I know, based on the investigation to date, that, using the internet, BARTON has expressed an interest to travel within the state of Oklahoma to engage in sexual acts with children. BARTON has provided Friday evenings as the time that works best for him, and he previously suggested October 11, 2024 as a date to meet with the OCE and the OCE's juvenile females. Additionally, he has accepted the invitation to meet with the OCE and to engage in sexual acts with the OCE's juvenile females on Friday, January 24, 2025 at 6 p.m.

26.     Based on my training and experience, I believe BARTON is still interested in, and engaging in a behavioral pattern demonstrating his intentions to engage in sexual activity with the OCE's juvenile females, and the ability to monitor the **SUBJECT**

**ACCOUNT** will assist in apprehending BARTON and seizing the device BARTON is using to persuade, induce, entice, and coerce any individual who had not attained the age of 18 years to engage in sexual activity.

27.     In my training and experience, I have learned that Verizon is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be ten (10) or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

28.     Based on my training and experience, I know that Verizon can collect cell-site data about the **SUBJECT ACCOUNT**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless

providers such as Verizon typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

29.    Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers—as transmitted from a cellular device to a cellular antenna or tower—can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

30.    Based on my training and experience, I know wireless providers such as Verizon typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as Verizon typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in

their normal course of business. In my training and experience, this information may assist in locating evidence of the crime described above and apprehending BARTON. In my training and experience, this information may also constitute evidence of the crime under investigation because the information can be used to identify the **SUBJECT ACCOUNT**'s user or users and may assist in the identification of co-conspirators.

31.     In my training and experience, obtaining precise location information for the next forty-five (45) days for the **SUBJECT ACCOUNT** will assist and aid law enforcement in seizing evidence of BARTON travelling to engage in sexual acts with children and apprehending BARTON.

## **AUTHORIZATION REQUEST**

32.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Fed. R. Crim. P. 41. The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in **Attachment A** for each communication to or from the **SUBJECT ACCOUNT**, without geographic limit, for a period of forty-five (45) days pursuant to 18 U.S.C. § 2703.

33.     I further request, pursuant to 18 U.S.C. § 2703(b)(1)(A), that the Court find that the government is not required to provide notice of this warrant to the subscriber, customer, or person who was monitored. I also request, pursuant to 18 U.S.C. § 3123(d), that **VERIZON** be ordered not to disclose to the listed customer or any other person the existence and/or use of the pen register and trap-and-trace device sought herein.

Additionally, there is reasonable cause to believe that providing immediate notification of the warrant to the subscriber, customer, or person who is being monitored may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber, customer, or user of the **SUBJECT ACCOUNT** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 2705(a)(2). Therefore, I request that the Court order **VERIZON** not to notify any other person of the existence of this warrant and order for a period of one year from the date the requested warrant is issued, except that the service provider may disclose this warrant and order to an attorney for the service provider for the purpose of receiving legal advice. As further specified in **Attachment B**, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

34.     I further request that the Court direct **VERIZON** to disclose to the government any information described in Section I of **Attachment B** that is within its possession, custody, or control. Because the warrant will be served on **VERIZON,** who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

35.    I further request that the Court order that all papers in support of this application, including the Affidavit and search warrant, be sealed for a period of one year from the date the requested warrant is issued, or until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.   Accordingly, there is good cause to seal these documents as their premature disclosure may jeopardize this investigation.

Respectfully submitted,

David Garrison
Special Agent
FBI


Subscribed and sworn to before me on January 22, 2025.




CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE

# **ATTACHMENT A**

## **Property to Be Searched**

1.    The cellular telephone assigned call number **(405) 777-9952** (the "**SUBJECT ACCOUNT**") whose wireless service provider is **VERIZON** (the "Provider"), a company that accepts process at 180 Washington Valley Road, Bedminster, NJ 07921.

2.    Records and information associated with the **SUBJECT ACCOUNT** that is within the possession, custody, or control of the Provider.

## ATTACHMENT B

### Particular Things to Be Seized

**I.    Information to be Disclosed by the Provider**

To the extent that the information described in **Attachment A** is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the **SUBJECT ACCOUNT** listed in **Attachment A**:

a.    The following information about the customers or subscribers associated with the **SUBJECT ACCOUNT** for the time period from January 24, 2025 for 45 days thereafter:

  i.    Names (including subscriber names, user names, and screen names);

  ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii.    Local and long-distance telephone connection records;

  iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v.    Length of service (including start date) and types of service utilized;

  vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity

Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records;

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **SUBJECT ACCOUNT**, including:

    1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

    2. information regarding the cell tower and antenna face (also known as "sectors" through which the communication were sent and received; to include the cell tower roundtrip network measurements from tower to device and back to tower, commonly referred to as Timing Advance data (RTT, PCMD, TrueCall, LOCDBOR, etc.).

b. The following information about the customers or subscribers associated with the **SUBJECT ACCOUNT** for a period of 45 days from the issuance of the warrant, including:

i. Names (including subscriber names, user names, and screen names);

ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii. Local and long-distance telephone connection records;

iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v. Length of service (including start date) and types of service utilized;

    vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

c.    Prospective information about the location of the cellular phone associated with the **SUBJECT ACCOUNT** for a period of 45 days (during all times of day and night) from the issuance of the warrant, including:

    i.    E-911 Phase II data;

    ii.    GPS data to include cell tower sector information;

    iii.    Latitude-longitude data;

    iv.    Other precise location information, including engineering data to include but not limited to RTT records, PCMD records, Location Database of Records (LOCDBOR) and/or NELOS records, TrueCall records, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, LTE, etc.); and

    v.    Pen Register / Trap and Trace device with prospective cell site information or data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the **Subject Account** during any voice, SMS, and/or data transmission, including but not limited to engineering data which would include RTT records, PCMD records, Location Database of Records (LOCDBOR) and/or NELOS records, TrueCall records.

## II.    Information to Be Seized by the Government

All information described above in Section I that would assist and aid in the location and apprehension of Ronnie Allen BARTON as he travels intrastate to engages in sexual acts with minors.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by **VERIZON** in order to locate the things particularly described in this Warrant.

## ATTACHMENT C

### 18 U.S.C. § 3122 Certification

In support of this application, and pursuant to 18 U.S.C. § 3122, I state that I am an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure. I certify that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by the Investigating Agency of Ronnie Allen BARTON for violation of the Target Offense.

I declare under penalty of perjury under the laws of the United States of America that the foregoing paragraph is true and correct.

_1/22/2025_
Date

Assistant United States Attorney